UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| PATRICE MARIE BOSTIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:17 CV 127 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Patrice Bostic brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found Bostic was not disabled because none of her medically determinable impairments were severe.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Bostic filed her application for DIB on July 31, 2014, claiming that she became unable to work on September 1, 2010, because of social anxiety, arthritis, depression, panic attacks, memory loss, and high blood pressure. (Tr. 131-32, 164.) Bostic was 50 years of age at the time of her

alleged onset of disability. Her claims were denied initially. (Tr. 67-71.) Following an administrative hearing, Bostic's claims were denied in a written opinion by an ALJ, dated May 23, 2016. (Tr. 11-21.) Bostic then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 8, 2017. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Bostic first argues that the ALJ "failed to properly evaluate Bostic's impairments at step two." (Doc. 12 at p. 6.) She next contends that the ALJ "failed to properly consider Bostic's subjective reports." *Id.* at p. 12.

## II. The ALJ's Determination

The ALJ first found that Bostic last met the insured status requirements of the Social Security Act on December 31, 2015. (Tr. 13.) He further found that Bostic did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2010, through her date last insured of December 31, 2015.[1] *Id.* The ALJ stated that, through the date last insured, Bostic had the following medically determinable impairments: mild degenerative disc disease (DDD) of the lumbar spine; hypertension; degenerative joint disease (some diffuse arthritis); obesity; depression; and anxiety. *Id.* The ALJ found that Bostic did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months. (Tr. 14.)

The ALJ concluded that Bostic was not under a disability, as defined in the Social Security

---

[1]To qualify for DIB, Bostic must prove disability on or before the expiration of her insured status. *Davidson v. Astrue*, 501 F.3d 987, 989 (8th Cir. 2007) ("[w]hen an individual is no longer insured for Title II disability purposes, we will only consider [her] medical condition as of the date [she] was last insured").

Act, at any time from September 1, 2010, her alleged onset date, through December 31, 2015, the date last insured. (Tr. 21.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on July 31, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2015, the date last insured.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment

or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.  Discussion

Bostic first argues that the ALJ made errors in evaluating the severity of her impairments. Bostic next argues that the ALJ erred in assessing the credibility of her complaints. The undersigned will discuss these claims in turn, beginning with the ALJ's credibility analysis.

**A.    Credibility Analysis**

The ALJ first summarized Bostic's allegations regarding her limitations. In her Disability Report completed August 15, 2014, Bostic alleged that she can no longer work because of her depression, social anxiety, and arthritis. (Tr. 15, 176.) Bostic stated that her arthritis made her joints, hips, knees, and hands ache; and her back "goes out" and causes her to be bedridden for a week or more. *Id.* She alleged that her social anxiety limits her from being around people, and that she "can't deal with people." *Id.*

At the administrative hearing, Bostic testified that she lives in a trailer with her husband and seventeen-year-old son. (Tr. 15, 30.) She has a driver's license and drives when she has to, but does not typically go anywhere when her husband is gone working as a truck driver because she does not like to leave the house. (Tr. 15, 31.) When she has tried to work in the past as a housekeeper, her back and hips "won't really allow [her] to." (Tr. 15, 32.) Bostic testified that she has back pain seventy percent of the time every day, which varies depending on her level of activity. (Tr. 15, 32-33.) She can only stand about five minutes before she has to change positions due to back pain; she can sit for a maximum of thirty minutes before she has to stand due to back pain; and she needs to lie down approximately twice a day to relieve her back pain. (Tr. 15, 34.) Bostic testified that she also has pain in her forearms and hands that she attributes to arthritis, and that she can only use her hands and arms for about five minutes. (Tr. 15, 35-36.) She occasionally experiences swelling in her ankles if she is on her feet for too long. (Tr. 15, 36-37.) Bostic testified that she experiences constant anxiety and depression, which causes her to feel uncomfortable around people in public and even around her own family. (Tr. 16, 37.) Her depression also causes her to have difficulty with concentration. (Tr. 16, 38.) Bostic testified that she only does minor housework like picking up, and her husband does all the other household chores and grocery shopping. (Tr. 16, 39-41.)

The ALJ found that Bostic's medically determinable impairments could have been reasonably expected to produce her alleged symptoms, however, her statements concerning the limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence of record. (Tr. 16.)

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will

defer to the ALJ's decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ must consider all of the evidence, including objective medical evidence, and evidence relating to the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions. *See Julin*, 826 F.3d at 1086; *see also* 20 C.F.R. § 416.929(c). The ALJ does not need to discuss each factor separately; rather, the court will review the record as a whole to ensure relevant evidence was not disregarded by the ALJ. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *see also Dunahoo*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

Here, the ALJ properly discounted Bostic's credibility based upon the objective medical evidence of record, Bostic's daily activities, a large gap in treatment for her impairments, the lack of prescription pain medication, and the effectiveness of medication taken for her mental impairments.

The ALJ first discussed the medical evidence of record. He stated that there is a "veritable dearth of medical evidence in the record that consists of only 34 pages," and that there is "very little in these few medical records to document the claimant's subjective complaints." (Tr. 16.) The ALJ noted that Bostic's lumbar degenerative disc disease is established in the record as a

medically determinable impairment based on x-rays that were taken of her lumbosacral spine in August of 2010. (Tr. 16, 254.) These studies revealed less than five degrees dextroscoliosis of the lumbar spine and mild degenerative spondylosis most pronounced at the L5-S1 and L4-5 levels. (Tr. 254.) The ALJ pointed out that this is the only imaging study in the record of Bostic's spine. (Tr. 16.) He further noted that Bostic does not take any prescription medication for her alleged lumbar back pain. (Tr. 17.)

Notably, the ALJ stated that, despite Bostic's allegations of disability since September 1, 2010, there are no medical records in evidence that are dated prior to May 8, 2014, other than the lumbar spine x-rays cited above. The ALJ properly cited these factors as detracting from Bostic's allegations of disabling back pain. *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (conservative treatment with over-the-counter medication and limited use of prescription medication inconsistent with disabling pain); *Novotny v. Chater,* 72 F.3d 669, 671 (8th Cir. 1995) (although claimant rated pain at a level ten, failure to seek regular or sustained treatment coupled with lack of prescription pain medication inconsistent with disabling pain).

The ALJ next discussed Bostic's treatment for her various complaints at the Kneibert Clinic. On May 8, 2014, Bostic presented to primary care physician Bennie N. Till, M.D., for a follow-up regarding panic attacks and hypertension. (Tr. 17, 222.) It was noted that Bostic was "not currently experiencing pain." (Tr. 222.) Bostic reported that she was depressed all the time; and has "some anxiety but stable with meds." *Id.* On examination, Dr. Till noted "some arthritis," and Bostic was anxious. (Tr. 223.) Bostic's blood pressure was 130/70. (Tr. 222.) He diagnosed her with improved depression; and unchanged back pain, with some diffuse arthritis. (Tr. 223-24.) Dr. Till recommended heat, exercise, and Tylenol as needed for Bostic's arthritis;

and continued the Xanax[2] prescribed for her depression. (Tr. 224.) He also emphasized the importance of keeping her blood pressure at or below 130/80. *Id.*

On August 8, 2014, Bostic returned to Dr. Till for follow-up. (Tr. 248.) Dr. Till noted that Bostic "says she is disabled." *Id.* Bostic reported that she was unable to be gainfully employed due to her back pain and anxiety, and was "unable to do any significant lifting." *Id.* She presented Dr. Till forms from her attorney regarding the degree of her disability. *Id.* Dr. Till stated that he would answer questions "that are possible" but he generally suggested that Bostic needed "a work capacity assessment as [a] number of question[s] [he was] unable to answer with any accuracy." *Id.* Bostic reported that she had been "really stressed" that month, noting that "they are going to stop her disability check for her and her son"; and "they took their income tax check also." *Id.* Upon examination, Bostic was moderately obese, her posture and gait were normal, she was able to get on and off the exam table, her muscle strength and tone were normal, and she had no neurologic abnormalities. (Tr. 250.) Dr. Till noted some low back tenderness and some tight muscles, and some difficulty with bending and squatting. *Id.* Bostic's affect was depressed and anxious. *Id.* Bostic reported that she "cannot do repetitive activity," but Dr. Till stated "I cannot adequately assess her functional capability." *Id.* Dr. Till found that Bostic's hypertension was stable with medication. *Id.* He found that Bostic had "some diffuse arthritis" and low back pain, but he could not adequately evaluate her functional impairment. *Id.* He recommended "a work capacity evaluation [ ] to determine [Bostic's] capability [for] gainful employment." *Id.* Dr. Till stated that Bostic "probable[sic] by history is unable to [] maintain gainful employment." *Id.* Dr. Till also assessed "general anxiety and depression," and noted Bostic "say[s] her nerves interfer[e] with functional activity even with meds." *Id.* Dr. Till

---

[2]Xanax is indicated for the treatment of anxiety and panic disorder. *See* WebMD, http://www.webmd.com/drugs (last visited September 12, 2018).

discussed the importance of regular exercise and weight loss, continued the Xanax for depression and anxiety, and recommended Tylenol as needed for pain. (Tr. 251.) He indicated that he would refer Bostic for a mental health consultation "if needed." *Id.*

On November 21, 2014, Bostic reported that she was "really stressed" because her husband just returned from off the road and was yelling at her and accusing her of things. (Tr. 246.) She was frustrated about her marital relationship; and her son was upset because it was his birthday and his parents were fighting. *Id.* Six months later, during a May 14, 2015 follow-up, Bostic was "doing well." (Tr. 243.) Her blood pressure was stable. She reported some stress and back pain, but indicated that she had been "doing pretty good." *Id.* On May 27, 2015, Bostic's blood pressure was stable, and she still had "some diffuse pain due to arthritis," but no new complaints. (Tr. 240.) In August 2015, Bostic had a walk-in visit with a different provider at the Kneibert Clinic for medication refills. (Tr. 237.) Bostic was only given a ten-day prescription of Xanax. *Id.*

On October 9, 2015, Bostic presented to Gary Dausmann, M.D., to establish care. (Tr. 234.) Dr. Dausmann found that Bostic's anxiety and blood pressure were controlled and Bostic was "doing well." (Tr. 234.) Dr. Dausmann did not mention Bostic's prior diagnoses of back pain and degenerative joint disease. *Id.* He continued her Xanax and blood pressure medications. (Tr. 235.)

Bostic presented to Naveed J. Mirza at Kneibert Clinic for a "disability exam" on September 16, 2014. (Tr. 225-26.) Bostic's husband provided "collateral information." (Tr. 225.) He reported that Bostic has "bad social anxiety," does not even want to be around family, and becomes fearful when being around people. *Id.* He indicated that these symptoms began five to six years prior, when her mother died. *Id.* Bostic reported that the Xanax "definitely

helps" with panic and anxiety issues. *Id.* She stated that she has tried to work but she "became very uncomfortable" and had pain due to arthritis. (Tr. 226.) Bostic reported that she had experienced problems with anxiety all her life, which causes her to feel uncomfortable around people. *Id.* She stated that she had also experienced depression since she was a child, with symptoms of feeling sad, feeling like a failure, and crying spells. *Id.* Bostic denied any thoughts of suicide. *Id.* She reported activities of daily living of watching television, talking to her son, and doing some chores. *Id.* Upon examination, Bostic's affect was anxious and her mood was congruent to her mood; her thought process and content was normal other than reflecting low self-esteem; she was tearful at times; her immediate recall and digit span was intact; her insight was poor; and her judgment was fair. (Tr. 230.) Dr. Mirza diagnosed Bostic with panic disorder, generalized anxiety disorder, major depressive disorder, and a GAF score of 50-55. (Tr. 229-30.) Dr. Mirza stated:

> It seems that the social anxiety has limited her ability to be around others and has made her withdraw from others and caused some difficulties maintaining socially but seems that her husband has been more of an enabler and was noted to be exaggerating some of the reported social limitations based on his report. It does seem that she has been dependent on Xanax which may limit her ability further due to the dependency on medications. She had been dependent on her Mother for long time until she passed away and then her husband had taken over that role but that it had led to further reclusive behaviors due to reported anxiety. It does seem that her anxiety limits her to be around others but her ability to concentrate and stay on task does not seem to be impaired at that time. She is not restricted in daily activities due to mental issues but claims physical problems impacting her functioning. She does seem to be limited in a work related setting where she will be struggling in social situations and interaction with others. It has to be mentioned that her ability to function in low social situations seem intact at this time.

(Tr. 230-31.)

The ALJ's finding that the medical evidence was not supportive of Bostic's subjective complaints of disabling pain and limitations is supported by the record. The ALJ properly

considered objective medical evidence showing several normal or mild examination findings, both physical and mental. *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints).

The ALJ also considered Bostic's daily activities. He stated that, despite her allegations at the hearing and the consultative mental examination of complete disability, she is able to stay alone with her son for long periods while her husband works as an over-the-road truck driver; drive; attend doctor appointments without difficulty; do some housework; and prepare simple meals. (Tr. 20.) The ALJ did not err in finding Bostic's daily activities inconsistent with her allegations of extreme limitations. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that the claimant's complaints were not fully credible).

In sum, the Court finds that the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Bostic's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.") (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) ).

**B.     Step Two Determination**

Bostic contends that the ALJ erred in finding Bostic did not have a severe impairment or combination of impairments at step two. She further contends that the ALJ erred in failing to further develop the record.

The claimant bears the burden of proving the severity of an impairment or combination of impairments. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.*; *see also* 20 C.F.R §§ 404.1520(c), 416.920(c). Being able to do basic work activities means having the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Kirby*, 500 F.3d at 708. A diagnosis of a given impairment does not, on its own, indicate that the impairment is severe. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough [Plaintiff] was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that [Plaintiff']s depression and anxiety was not severe.").

The ALJ found that Bostic had the following medically determinable impairments: mild degenerative disc disease of the lumbar spine, hypertension, degenerative joint disease with some diffuse arthritis, obesity, depression, and anxiety. (Tr. 13-14.) Bostic appears to challenge the ALJ's finding regarding both her physical and mental impairments. Considering the record as a whole, the Court concludes that substantial evidence supports the ALJ's finding that Bostic's impairments, considered individually or in combination, were not severe during the alleged disability period.

As noted by the ALJ and discussed above, there is a dearth of medical evidence in this case. The ALJ discussed treating physician Dr. Till's records in detail. (Tr. 17-18.) The ALJ

acknowledged Dr. Till's opinion that Bostic was "probably by history" unable to maintain gainful employment, but assigned no weight to the opinion for the following reasons: (1) the issue of whether Bostic is disabled is reserved to the Commissioner; (2) the opinion is vague, as Dr. Till used the term "probably" to begin his statement; (3) Dr. Till's use of the term "by history" indicates the opinion was based on Bostic's subjective complaints; and (4) Dr. Till admitted that he could not "adequately assess the claimant's functional capability." (Tr. 18.)

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). Regardless of the decision, the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ provided sufficient reasons for assigning no weight to Dr. Till's opinion. Dr. Till's opinion was equivocal, appeared to be based on Bostic's subjective complaints, and Dr. Till articulated his inability to accurately assess Bostic's functional capacity. His own treatment notes reflected minimal abnormalities on examination. Dr. Till did not prescribe any pain medication, but only suggested that Bostic take Tylenol as needed and exercise.

As to Bostic's mental impairments, the ALJ assigned "significant weight" to the opinions of consultative psychologist Dr. Mirza, "except for his opinions regarding Bostic's social limitations." (Tr. 19-20.) The ALJ accurately noted that Dr. Mirza's findings regarding social limitations were based on the subjective reports of Bostic and her husband, yet Dr. Mirza noted that both exaggerated the extent of Bostic's mental limitations. (Tr. 20.) The ALJ stated that Bostic's alleged severe anxiety is not documented in the record. *Id.* He pointed out that Dr. Till has consistently found that Bostic's anxiety was "controlled." *Id.*

Bostic argues that, because there was no other opinion regarding Bostic's functional limitations, the ALJ should have further developed the record. (Doc. 18 at 11.) The ALJ has the duty to develop the record, which includes developing the record as to the medical opinion of the claimant's treating physician. *Higgens v. Apfel,* 136 F. Supp.2d 971, 978 (E.D. Mo. 2001) (citing *Brown v. Bowen,* 827 F.2d 311, 312 (8th Cir. 1987). The ALJ is required to re-contact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *see* 20 C.F.R. § 404.1520b(c) (giving the Commissioner discretion to re-contact a treating physician where evidence is inconsistent or insufficient). The ALJ is not required, however, to contact the treating physician whenever the ALJ rejects that opinion. *See Hacker v. Barnhart,* 459 F.3d 934, 938 (8th Cir. 2006).

In this case, Dr. Till's treatment notes reveal conservative and infrequent treatment for impairments that resulted in little to no abnormalities on examination. Dr. Till's only treatment note in the record prior to the issuance of her opinion indicated that Bostic was "not currently experiencing pain," had "some anxiety but stable with meds," had normal blood pressure, and noted only "some arthritis." (Tr. 222-223.) Dr. Till recommended heat, exercise, and Tylenol as needed for Bostic's arthritis. (Tr. 224.) The only imaging study included in the record, x-rays that were taken of her lumbosacral spine in August of 2010, revealed less than five degrees dextroscoliosis of the lumbar spine and mild degenerative spondylosis at the L5-S1 and L4-5 levels. (Tr. 254.)

The ALJ had sufficient evidence to determine whether Bostic was disabled during the relevant period. The ALJ was not confused about Dr. Till's opinion. Instead, he rejected Dr. Till's opinion because it was equivocal, inconsistent with the record, and based on Bostic's

subjective complaints. Significantly, Dr. Till never did provide a functional capacity assessment. When Dr. Till's opinion along with his treatment notes are considered as a whole, the clear implication is that Dr. Till felt unable to complete the requested disability forms not because he did not have enough information, but because he did not believe Bostic was disabled.

Dr. Mirza's opinion regarding Bostic's social functioning was based on subjective reports of Bostic and her husband that Dr. Mirza found were exaggerated. Dr. Mirza's examination findings along with Dr. Till's records provide sufficient evidence with which to assess the severity of Bostic's mental limitations.

Thus, the ALJ was not required to re-contact Drs. Till or Mirza, obtain a consultative physical examination, or otherwise further develop the record. *See Tellez v. Barnhart,* 403 F.3d 953, 956-57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence").

The ALJ's determination that Bostic's medically determinable impairments were not severe is supported by substantial evidence. The ALJ performed a proper credibility analysis and found Bostic's allegations to be less than credible. Notably, Bostic received no medical treatment during the first three-and-a-half years of the period during which she alleges disability. She provides no explanation for this significant gap in treatment. The minimal medical treatment Bostic did receive during the relevant period does not establish the presence of impairments that significantly limit her ability to perform basic work activities. The sequential evaluation process ends at step two if the impairment has no more than a minimal effect on the claimant's ability to work. *Kirby,* 500 F.3d at 707; *Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989). Thus, the

ALJ's decision finding Bostic not disabled is supported by substantial evidence in the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni<br>
ABBIE CRITES-LEONI<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018.